UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

KIM AVARA INZINNA                                                                                          PLAINTIFF

V.                                                                       CIVIL ACTION NO. 3:24-CV-358-DPJ-ASH

PATRICIA CHINNICI                                                                                         DEFENDANT

ORDER

This alienation-of-affection case is before the Court on Defendant Patricia Chinnici's motion to dismiss for lack of personal jurisdiction [4]. Because Plaintiff Kim Inzinna has met her burden under Federal Rule of Civil Procedure 12(b)(2), the motion [4] should be denied.

I.   Factual Background

Inzinna says she learned on October 17, 2023, that her husband Steven was engaging in an affair with Chinnici, a California resident. Compl. [1-1] at 2. The affair allegedly began on September 14, 2023, and remains ongoing. Inzinna Aff. [8-1] ¶ 5; Pl.'s Resp. [9] at 1. According to Inzinna, Chinnici communicated with Steven via emails, text messages, and phone calls while Inzinna and Steven were still married and living in Mississippi. Compl. [1-1] at 1-2. Inzinna and Steven are now pursuing a divorce. *Id.* at 2. Believing Chinnici ruined her marriage, Inzinna sued her in the Circuit Court of Hinds County, Mississippi, asserting alienation of affection and criminal conversation. *Id.* at 3. Chinnici removed the case to this Court citing diversity jurisdiction and now seeks dismissal for lack of personal jurisdiction. Subject-matter jurisdiction exists, and her motion has been fully briefed.

II.  Standard

"When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAA Dev.*

*LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  If, as here, the "district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'"  *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

For that analysis, the Court accepts a plaintiff's "uncontroverted allegations" as true and resolves any factual conflicts in the plaintiff's favor.  *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).  In doing so, the Court "may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"  *Quick Techs., Inc.*, 313 F.3d at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

Finally, "[t]he prima-facie-case requirement does not require the court to credit conclusory allegations."  *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).  Nor may the plaintiff rely on the allegations in a complaint that are "contradicted by affidavits."  *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) (holding that plaintiff failed to make prima facie case when defendant presented uncontradicted affidavits).

III.    Analysis

Personal jurisdiction has two requirements.  "First, the nonresident defendant must be amenable to service of process under [the] State's long-arm statute.  Second, the assertion of in personam jurisdiction must be consistent with the 14th Amendment's Due Process Clause."  *Dickson Marine Inc. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999).

      A.      Mississippi's Long-Arm Statute

Under Mississippi's long-arm statute:

> Any nonresident person. . . , firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57. Inzinna invokes the tort prong, which is met "if any element of the tort (or any part of any element) takes place in Mississippi." *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997).

The torts Inzinna asserts are alienation of affection and criminal conversation, but Mississippi no longer recognizes the latter. *Saunders v. Alford*, 607 So. 2d 1214, 1219 (Miss. 1992). Alienation of affection has three elements: "(1) wrongful conduct of the defendant; (2) loss of consortium; and (3) causal connection between such conduct and loss." *Saunders*, 607 So. 2d at 1215.

In her Complaint, Inzinna says Chinnici's "actions of texting, calling, and emailing Steven Inzinna while he was in Mississippi were the direct and proximate cause of the alienation of affections." Compl. [1-1] at 2–3. She also alleges that Chinnici maintained a relationship with Steven while he was married to Inzinna and that her conduct caused irreparable harm to Inzinna's marriage in Mississippi. *Id.* at 2. Some allegations in the Complaint are borderline conclusory, but none have been rebutted by Chinnici.

In any event, there is no need to parse the unrebutted, non-conclusory assertions in the Complaint because Inzinna provides details about the relationship in her affidavit. The Court will examine that affidavit in the next section, but Inzinna recounts communications between

3

Chinnici and Steven reflecting a relationship that allegedly interfered with Inzinna's marriage. Chinnici neither denies the relationship nor offers evidence to contradict Inzinna's assertions. And even if Chinnici had offered evidence, any factual disputes would be resolved in Inzinna's favor. *See Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (noting that "conflicts between the facts contained in the parties' affidavits and other documentation" must be resolved for the plaintiff) (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

Taking Plaintiff's unrebutted allegations and evidence as true, she satisfies the long-arm statute requirements by showing a relationship between Chinnici and Steven that led to Inzinna's pending divorce in Mississippi. *See Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006) ("If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied.").

B.     Due Process

Inzinna must still make a prima facie showing that exercising personal jurisdiction satisfies due process.

> Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) defendant has purposefully availed [herself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.

*Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 813 (5th Cir. 2006) (citations omitted). Under the first prong—minimum contacts—personal jurisdiction may be general or specific. *Seiferth*, 472 F.3d at 270. Inzinna asserts specific jurisdiction.

For the Court to have specific jurisdiction over a defendant, "due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over

4

the defendant be fair and reasonable." *ITL Int'l, Inc., v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012).

**Minimum Contacts:**

> Due process first requires that a defendant have sufficient contacts with the forum state such that [she] "should reasonably anticipate being haled into court there." This requirement can be satisfied by a showing that the defendant "purposely directed [her] activities toward the forum state or purposely availed [herself] of the privileges of conducting activities there." The defendant's contacts must be more than "random, fortuitous, or attenuated, or of the unilateral activity of another party or third person."

*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (other citations omitted)).

Inzinna hopes to meet this test primarily with her Complaint and affidavit. *See Allred*, 117 F.3d at 281 ("The Court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."). The affidavit alleges text messages and phone calls between Chinnici and Steven while Steven was in Mississippi:

> 6. On or about November 5, 2023, I viewed a text message from Defendant to Steven Inzinna using WhatsApp where Defendant reached out to Steven Inzinna asking if he was free to talk.
>
> 7. On November 20, 2023, at 9:32 p.m., I witnessed a telephone conversation between Defendant and Steven Inzinna discussing the details of the finalization of our divorce. The telephone call lasted approximately 41 minutes and 45 seconds.
>
> 8. On November 20, 2023, at 9:43 p.m., I witnessed a telephone call between Defendant and Steven Inzinna where Steven Inzinna stated that he was willing to walk off a bridge and into the ocean to find or be with her. The telephone call lasted approximately 1 hour, seventeen minutes and 19 seconds.
>
> 9. On January 5, 2024, at 9:11 p.m., I witnessed a telephone call between Defendant and Steven Inzinna where Steven Inzinna and Defendant were making plans with Steven Inzinna's proceeds from the pending divorce action. The telephone call lasted 13 minutes and 54 seconds.

> 10. On multiple occasions, I recorded repeated telephone conversations between Defendant and Steven Inzinna between September 14, 2023 and March 20, 2024.
>
> . . .
>
> 12. I witnessed multiple telephone conversations between Defendant and Steven Inzinna wherein Steven Inzinna made plans to visit Defendant in California.

Inzinna Aff. [8-1] ¶¶ 6–12.  Inzinna also attaches about 150 pages of Steven's telephone records saying they show a "pervasive, ongoing, purposely directed pattern of communication from the Defendant to Steven." *Id.* ¶11.

Chinnici offers neither her affidavit nor other evidence rebutting the allegation that she maintained a relationship with Steven that included substantial communications with him while he was in Mississippi, at least one of which she initiated.  *Cf.*, *Wyatt*, 686 F.2d at 283 n.13 (holding that plaintiff failed to make prima facie case where defendant presented uncontradicted affidavits).  But, as noted, such evidence would only address the non-conclusory allegations in the Complaint.  Because Inzinna submitted an affidavit, any fact questions Chinnici might have created would be resolved for Inzinnna.  *Patterson*, 826 F.3d at 233.

Chinnici nonetheless argues that Inzinna's evidence falls short.  Starting with the WhatsApp message, she says it fails to show minimum contacts because (1) Inzinna never identifies Chinnici's wrongful conduct *in that message*, (2) a WhatsApp message is directed at a "series of unknown locations"—i.e., servers—and not to Mississippi, and (3) the message is the only evidence of a communication from Chinnici to Steven.  Def.'s Reply [10] at 2.  As for the various conversations Inzinna says she heard and recorded, Chinnici claims Inzinna fails to show (1) how she knows Chinnici was on the other end, (2) whether Chinnici initiated the calls, or (3)

6

what exactly was said. She then argues that the phone records are meaningless because Inzinna never identified Chinnici's telephone number.

Chinnici has a point regarding the telephone records (at least at this stage). While they could eventually prove the pattern Inzinna alleges, there is no way to know because Inzinna never provides Chinnici's number. But even without those records, Inzinna has met her burden.

Looking at the other evidence collectively—rather than piecemeal—Inzinna testified in her affidavit that she overheard and recorded many conversations between Chinnici and Steven while he was in Mississippi. Inzinna Aff. [8-1] ¶¶ 7–9. And what she heard indicates a relationship during Inzinna's marriage. *Id.* She also swears that she observed electronic messages between Chinnici and Steven, identifying one where Chinnici asked Steven to call. *Id.* ¶ 6. That the electronic messages may have gone through various servers in other states before reaching Steven in Mississippi does not alter the alleged fact that Chinnici "purposefully direct[ed]" the message to Steven in Mississippi. *ITL Int'l, Inc.*, 669 F.3d at 498-99.

Still, Chinnici argues that there is no personal jurisdiction because there is no evidence she initiated those communications other than the single WhatsApp message. She relies on *Thompson v. Chrysler Motors Corp.*, in which the Court noted in dicta that the plaintiffs' calls to the non-forum defendant constituted "unilateral activity" that could not establish minimum contacts by the defendant. 755 F.2d 1162, 1171 (5th Cir. 1985).

But the WhatsApp message cannot be viewed in isolation. It and the other evidence suggest that the ongoing communications between Chinnici and Steven were bilateral. Chinnici was directing her actions to Steven in Mississippi, and "even a single purposeful contact is sufficient to satisfy the due process requirement of 'minimum contacts' when the cause of action arises from the contact." *Id.* at 1172 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223

7

(1957); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir. 1982) (finding that one defamatory call from defendant to the forum state established minimum contacts because "the number of contacts with the forum is not, by itself determinative")).

In sum, Chinnici offers no evidence denying that she contacted Steven in Mississippi, communicated with him repeatedly, and had a relationship with him that caused Inzinna's divorce. Having purposefully directed her activities to Mississippi, she "should reasonably anticipate being haled into court" there. *ITL Int'l, Inc.*, 669 F.3d at 498. Her alleged contacts were not "random, fortuitous, or attenuated," nor were they "the unilateral activity of another party or third person." *Id.*; *see also Knight v. Woodfield*, 50 So. 3d 995, 1000 (Miss. 2011) (finding personal jurisdiction in alienization-of-affection case based on phone calls and text messages); *Bailey v. Stanford*, No. 3:11-CV-00040-NBB, 2012 WL 569020, at *7 (N.D. Miss. Feb. 21, 2012) (same). Inzinna satisfies the minimum-contacts requirement.

**Nexus:** Even with minimum contacts, specific jurisdiction still requires a "a nexus between the defendant's contacts and the plaintiff's claims." *ITL Int'l, Inc.*, 669 F.3d. at 498. The question is whether Inzinna's claim "arise[s] out of or relate[s] to the defendant's purposeful contacts to the forum." *Id.* at 500. Inzinna bases her alienation-of-affection claim on Chinnici's communications with Steven while he was in Mississippi. And she makes the uncontroverted assertion that Chinnici maintained a relationship with Steven—including the alleged conversations—that irreparably injured their marriage. Compl. [1-1] ¶¶ 4, 5; *see also* Inzinna Aff. [8-1] ¶¶ 6–10, 12. Inzinna satisfies the nexus requirement.

**Fair Play and Substantial Justice:** "Once there has been a determination that the defendant purposefully directed [her] activities at the forum state, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction

8

unreasonable.'" *Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996) (quoting *Burger King Corp.*, 471 U.S. at 477).  Chinnici offers neither argument nor evidence addressing this burden, and the Court sees nothing in the record suggesting she can meet it.  Adjudicating the action in Mississippi satisfies due process.

IV.  Conclusion

The Court has considered all arguments.  Those not addressed would not have changed the outcome.  For all these reasons, Chinnici's motion to dismiss for lack of personal jurisdiction [4] is denied.  Upon the filing of the instant motion, Magistrate Judge Andrew S. Harris stayed discovery.  That stay is lifted, and the parties are directed to contact Judge Harris's chambers to schedule a case-management conference.[1]

**SO ORDERED AND ADJUDGED** this the 13th day of November, 2024.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[1] Inzinna's response to this motion included a request to depose Chinnici.  That request is moot.

9